**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ADAM HAASE McNICOL, | Case No. 26-cv-498 (LMP/JFD) |
| Plaintiff, | |
| v. | **ORDER AFFIRMING** |
| | **MAGISTRATE JUDGE ORDER** |
| MARTIN COUNTY, MINNESOTA; | **WITH MODIFICATION** |
| HUMAN SERVICES OF FARIBAULT | |
| & MARTIN COUNTIES; TAYLOR L. | |
| McGOWAN; and WENDY L. ZIEMER, | |
| Defendants. | |

Plaintiff Adam Haase McNicol brought this lawsuit against Defendants Martin County, Minnesota; Human Services of Faribault & Martin Counties ("HSFMC"); and individuals who work for HSFMC—Taylor L. McGowan and Wendy L. Ziemer. On February 18, 2026, United States Magistrate Judge John F. Docherty issued an Order staying this case pending the completion of an appeal in a related state-court lawsuit. ECF No. 12 at 1 ("Stay Order") (citing *McNicol v. McNicol*, No. A25-1688 (Minn. Ct. App. appeal filed Oct. 10, 2025)).

McNicol objects to the Stay Order, arguing that it should be vacated or modified "because it is contrary to law and immoderate." ECF No. 16 at 2. Having reviewed the Stay Order, facts, and relevant law, the Court overrules McNicol's objections and affirms the Stay Order with modification.

**BACKGROUND**

McNicol is a retired United States Army Staff Sergeant.  ECF No. 7 ¶ 14.  In 2005, his then-wife filed a petition for dissolution of marriage, and on September 28, 2005, the Martin County District Court entered a judgment dissolving the marriage and establishing child support obligations.  *Id.* ¶¶ 21–22; *see also McNicol v. McNicol*, No. 46-FA-05-1213, Index #68 at 1 (Minn. Dist. Ct. Aug. 20, 2025).[1]  McNicol alleges that, at the time the dissolution order was entered, he was deployed to Baghdad, Iraq.  ECF No. 7 ¶¶ 21–22.

In 2025, McNicol petitioned HSFMC for an "administrative review" of the dissolution order based on certain "federal defenses" he believed to have merit, including an argument that the dissolution order was entered in violation of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.  Id.* ¶¶ 33–34.  But Ziemer and McGowan allegedly determined that McNicol was "not worth responding to," and did not take any action on McNicol's request.  *Id.* ¶¶ 35–38.

McNicol then filed a motion in state court, seeking to vacate the dissolution order. *McNicol*, No. 46-FA-05-1213, Index # 68 at 1 (Minn. Dist. Ct. Aug. 20, 2025).  He argued that "the judgment was entered against him without notice, hearing, or opportunity to appear, and was a violation of" the SCRA.  *Id.*  The state district court denied the motion. *Id.* at 2.  McNicol appealed, and that appeal is currently pending before the Minnesota Court of Appeals.  *McNicol v. McNicol*, No. A25-1688 (Minn. Ct. App. appeal filed Oct. 10,

---

[1]    The Court may take judicial notice of public court records.  *See, e.g., Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

2025). Briefing on McNicol's appeal is complete, and the matter was considered in April 2026. *McNicol*, No. A25-1688, Notice of Nonoral Conf. (Minn. Ct. App. Feb. 10, 2026). Under the Minnesota Court of Appeals' procedural rules, a decision is due by July 8, 2026. *Id.*

McNicol brought this action on January 20, 2026, ECF No. 1, and filed an amended complaint on February 10, 2026, ECF No. 7, asserting four causes of action. Count 1 alleges that Defendants are violating the SCRA[2] by enforcing the 2005 dissolution order, which McNicol argues is void under federal law. ECF No. 7 ¶¶ 48–55. Count 2 asserts First Amendment retaliation under 42 U.S.C. § 1983, alleging that Defendants took adverse action against him after he petitioned for administrative review of the dissolution order in May 2025. *Id.* ¶¶ 56–61. Count 3 alleges a denial of procedural due process under the Fourteenth Amendment and Section 1983, based on Defendants' certain state enforcement mechanisms. *Id.* ¶¶ 62–68. And Count 4 asserts municipal liability against Martin County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), premised on Martin County's broader enforcement policies. ECF No. 7 ¶¶ 69–74.

Magistrate Judge Docherty entered the Stay Order on February 18, 2026. ECF No. 12. The Stay Order notes that McNicol's federal claims are based on his assertion that

---

[2]    The SCRA was enacted to "protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943). Relevant here, it imposes "limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including insurance, taxation, loans, contract enforcement, and other civil actions." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014).

"the Minnesota state courts should not have imposed child-support obligations on [him] due to his status as a servicemember," and that the question is also at issue in his state-court appeal. *Id.* at 1. If McNicol is unsuccessful, the state-court judgment "would almost certainly dictate the outcome of this proceeding." *Id.* at 1. As a result, Magistrate Judge Docherty stayed this action "until that appeal has been fully resolved, including any subsequent review of the forthcoming decision of the Minnesota Court of Appeals by the Minnesota Supreme Court." *Id.* at 1. And the Stay Order authorized McNicol to request to lift the stay within seven days of "(1) a final decision of the Minnesota Supreme Court resolving the pending appeal; (2) a denial by the Minnesota Supreme Court of a petition for review of the forthcoming decision of the Minnesota Court of Appeals; or (3) the expiration of time in which to file a petition for review before the Minnesota Supreme Court." *Id.* at 2.

McNicol objects, arguing that the state-court appeal is not parallel to his federal claims, that the Stay Order fails to apply the correct legal framework, that the Stay Order extends to claims the state court will *not* resolve, and that the indefinite duration of the Stay Order causes him prejudice. *See generally* ECF No. 16.

## ANALYSIS

A district court's review of a magistrate judge's ruling on a non-dispositive matter is "extremely deferential," and "[r]eversal is warranted only if the ruling is clearly erroneous or contrary to law." *Coons v. BNSF Ry. Co.*, 268 F. Supp. 3d 983, 991 (D. Minn. 2017) (citation omitted). An order is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed," and is contrary

4

to law when "it either fails to apply or misapplies pertinent statutes, case law or rules of procedure." *Id.* (citations omitted).

A district court has inherent authority "to control its docket when facing concurrent state and federal litigation." *Contrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013); *see also Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936) (explaining that federal courts possess inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). This includes the authority to issue a temporary stay of a federal case if the stay does not "have the practical effect of a dismissal." *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990). Issuing such a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55; *see Cottrell*, 737 F.3d at 1249 (explaining that a court may issue a stay that "properly balances the rights of the parties and serves the interests of judicial economy"). The considerations relevant to that balance include whether the stay will simplify the issues before the court, prejudice the party opposing the stay, and is reasonable in scope and duration. *See Landis*, 299 U.S. at 254–56.

McNicol first argues that a stay is inappropriate because "the state appeal is not parallel" to his federal claims and the "issues presented in the state appeal do not overlap in any dispositive way with the claims here." ECF No. 16 at 5. But in Count 1, McNicol asserts that Defendants are enforcing a state court order that is void because it was entered in violation of the SCRA. ECF No. 7 ¶¶ 48–55. He makes the same argument in state court. *McNicol*, No. 46-FA-05-1213, Index # 68 at 1 (Minn. Dist. Ct. Aug. 20, 2025). There is no doubt that the state court appeal overlaps with McNicol's federal litigation, and

5

it makes little sense for the Court to consider his SCRA claim while the Minnesota Court of Appeals does the same. *Roehrs v. Walstrom*, No. 23-cv-1885 (SRN/DLM), 2024 WL 22089, at *6 (D. Minn. Jan. 2, 2024) ("A temporary stay will allow the Minnesota Court of Appeals to possibly resolve some or all of the substantive issues before this Court."); *Greene v. Walz*, No. 24-cv-4400 (KMM/DLM), 2025 WL 2383899, at *1 n.1 (D. Minn. Aug. 18, 2025) (explaining that "considerations such as the order of filing, the more-advanced status of the state case, and the desirability of avoiding duplicative litigation weigh in favor of staying this federal action pending resolution"). Allowing the state court proceedings to be resolved first will avoid the risk of inconsistent rulings and will narrow the issues this Court must adjudicate.

McNicol also argues that a stay is inappropriate because his three other claims are *not* presented in state court. ECF No. 16 at 4–5. The Court disagrees. Even if his three other claims are not *directly* presented in the state court litigation, the facts relevant to those claims are. For instance, in this case, McNicol alleges First Amendment retaliation for actions taken after he argued to the County that the dissolution order was void. ECF No. 7 ¶¶ 56–61. He also alleges that he was denied procedural due process because Defendants sought to collect on the allegedly void dissolution order. *Id.* ¶¶ 62–68. The state court appeal, in which McNicol asserts that the dissolution order is void, will undoubtedly provide insight into the common question at the heart of McNicol's federal claims. *See Window World Int'l, LLC v. O'Toole*, 21 F.4th 1029, 1034 (8th Cir. 2022) (upholding a stay where common issues of law and fact pervaded both federal and state court litigation). Regardless, when "a stay merely temporarily suspends the federal case while ongoing state

6

administrative and judicial review proceedings are completed, a district court is well within its inherent authority to issue a temporary stay," even when the stay "would be appropriate as to some but not all claims in a litigation." *Roehrs*, 2024 WL 22089, at *6 (citation modified). As a result, a stay here best "serves the interests of both judicial economy and justice." *Id.*

McNicol alternatively argues that the Stay Order lacks a "defined endpoint" and that he is prejudiced by an "indefinite, case-wide delay." ECF No. 16 at 6–7. He asks that the Court, at minimum, require Defendants to answer his complaint. *Id.* But the Stay Order has a defined endpoint: McNicol may seek to have the stay lifted when his appeal is final, either because the Minnesota Supreme Court has denied subsequent review or issued a decision. ECF No. 12 at 1–2. This is precisely the sort of "finite and less comprehensive stay" that a Court has discretion to enter. *Cottrell*, 737 F.3d at 1249. The Court therefore finds no error in Magistrate Judge Docherty's decision to stay this case.

With that said, the Court will modify the Stay Order slightly. In fashioning an appropriate stay, the Court should "consider what promotes efficiency and wise stewardship of time for the court, counsel, and litigants." *Vivorte, Inc. v. Gill*, No. 24-cv-1040 (DWF/DLM), 2024 WL 4164233, at *6 (D. Minn. Sept. 12, 2024). Waiting for the Minnesota Court of Appeals' decision promotes efficiency for the reasons already discussed and is a wise use of time because the decision should be issued by July 8, 2026. *See* Minn. Stat. § 480A.08, subd. 3(a). But extending the stay until the conclusion of the Minnesota Supreme Court's review process may insert unnecessary "uncertainty" about the date of finality. *Vivorte, Inc.*, 2024 WL 4164233, at *7. For instance, should

7

McNicol seek review of the Minnesota Court of Appeals' decision, the Minnesota Supreme Court would then take an indefinite amount of time deciding whether to hear McNicol's appeal. *See* Minn. R. Civ. App. P. 117, subd. 2 (noting the discretionary nature of further review). If the Minnesota Supreme Court does not take the appeal, several months will likely have passed and this Court will have received no further guidance on the relevant issues. That very real possibility[3] would do nothing to further judicial efficiency.

As a result, the Court will modify the Stay Order and allow McNicol to seek to lift the stay upon the issuance of a decision by the Minnesota Court of Appeals. *See, e.g.*, *Roehrs*, 2024 WL 22089, at *7 (imposing stay until "the Minnesota Court of Appeals issues a decision on the appeal before it" and noting that "[a]t that time and considering the Court of Appeals' decision, the Court will re-evaluate whether to extend the stay"); *Nguyen v. Barham & Maucere LLC*, No. 24-cv-1023 (KMM/LIB), 2025 WL 342078, at *3 (D. Minn. Jan. 30, 2025) ("Within seven days of any decision on the pending appeal . . . either party may move for this stay to be lifted."). To promote judicial efficiency and reduce prejudice to any party, such a motion to lift the stay may be filed within fourteen days of a decision by the Minnesota Court of Appeals.[4]

---

[3]     The Minnesota Supreme Court "accepts review in about 10-14 percent of cases from the Minnesota Court of Appeals." SUPREME COURT, https://mncourts.gov/supremecourt [https://perma.cc/TYB3-J56B].

[4]     McNicol also asks the court to issue a preservation order requiring Defendants to preserve certain electronically stored information because a prolonged stay "increases the risk of loss or degradation" of evidence. ECF No. 16 at 8. But McNicol provides no evidence to support his claim, and the Court does not share the same concern that a "loss or degradation" of electronically stored information will take place before this action continues in a matter of months.

## ORDER

Finding no clear error, and based upon all of the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. McNicol's Objections (ECF No. 16) are **OVERRULED**;

2. The Stay Order (ECF No. 12) is **AFFIRMED AS MODIFIED** as follows:

    Any party to this action may petition the Court to reconsider this stay within fourteen days of a decision being issued in McNicol's appeal to the Minnesota Court of Appeals in No. A25-1688.

Dated: May 18, 2026                          _s/Laura M. Provinzino_
                                             Laura M. Provinzino
                                             United States District Judge

9